UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL L.,[1]

    Plaintiff,

  v.

FRANK BISIGNANO,[2]
    Defendant.

CIVIL ACTION NO. 1:24-cv-01442

(Magistrate Judge Latella)

**MEMORANDUM**

This is an action brought under Section 1383(c) of the Social Security Act

and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the

Commissioner of Social Security (hereinafter, "the Commissioner") denying

Plaintiff Michael L.'s claims for a period of disability and disability insurance

benefits ("DIB") under Title II of the Social Security Act. (Doc. 1). For the reasons

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

[2] "In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office." *Kentucky v. Graham*, 473 U.S. 159, 166 n.11 (1985) (citing Fed. R. Civ. P. 25(d)(1)). Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Accordingly, we have substituted him as the Defendant in this action.

expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be affirmed.

## I.      Background and Procedural History

On December 1, 2021, Plaintiff Michael L. filed an application for Title II disability benefits. (Doc. 1, p. 2). In this application, Michael L. claimed disability beginning July 30, 2021. (*Id.*). The Social Security Administration initially denied his claims on June 23, 2022. (*Id.*). Michael L. filed a request for a hearing before an Administrative Law Judge ("ALJ") on April 13, 2023. (*Id.*). ALJ Daniel Balutis conducted the requested hearing on December 5, 2023. (*Id.*).

In a written opinion dated January 18, 2024, the ALJ determined that Michael L. is not disabled and therefore not entitled to the benefits sought. (*Id.*). Plaintiff appealed the decision to the Appeals Council, which denied his request for review on July 9, 2024. (*Id.*). This action was filed on August 26, 2024. (Doc. 1). The Commissioner responded on October 17, 2024, providing the requisite transcripts from the disability proceedings on the same day. (Doc. 8; Doc. 9). The parties then filed their respective briefs, (Doc. 16; Doc. 18; Doc. 24), with Plaintiff alleging three errors warranting reversal or remand. (Doc. 16, p. 1). The parties consented to proceed before a magistrate judge on August 27, 2024, (Doc. 7), and this case was reassigned to the undersigned on June 10, 2025.

## II.    Background and Procedural History

In a decision dated January 18, 2024, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act from August 4, 2021, through the date of this decision." (Tr. 18).[3] The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. The ALJ determined that Michael L. met the insured status requirements on the Social Security Act through December 31, 2025.

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. The ALJ determined that Michael L. "has not engaged in [SGA] since August 4, 2021, the amended alleged onset date." (Tr. 19). Thus, the ALJ's analysis proceeded to step two.

---

[3] Initially the alleged onset date was noted as July 30, 2021. Plaintiff had a prior Social Security Disability application which was denied by ALJ Michelle Wolfe on August 3, 2021. Parties agreed to amend the alleged onset date to August 4, 2021, which is the day after ALJ Wolfe issued the decision denying disabilities. (*See* Tr. 58–59, transcript of the hearing proceeding).

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found that Michael L. "has the following severe impairments: status post bilateral calcaneus fractures with subtalar arthritis, open reduction internal fixation of a tibial plateau fracture, hardware removal and left knee arthroplasty, chronic pain syndrome, and saphenous nerve injury." (Tr. 20). The ALJ also identified Michael L.'s non-severe impairments as: mixed hyperlipidemia, bilateral osteoarthritis of the shoulders, and adjustment disorder with depressed mood. (*Id.*).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimant's impairments meet those listings, then the claimant is considered disabled. 20

C.F.R. § 404.1520(a)(4)(iii). The ALJ determined that none of Michael L.'s

impairments, considered individually or in combination, met or equaled a Listing.

(Tr. 22). Specifically, the ALJ considered Listings 1.17 (Reconstructive surgery or

surgical arthrodesis of a major weight-bearing joint); 1.18 (Abnormality of a major

joint(s) in any extremity); and 1.19 (Pathologic fractures due to any cause). (Tr.

22).

Between steps three and four, the ALJ determines the claimant's residual

functional capacity ("RFC"), crafted upon consideration of the medical evidence

provided. The ALJ determined that Michael L.

> has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except: The claimant can stand/walk for 4 of 8
> hours. He can occasionally climb ramps and stairs, but never climb
> ladders, ropes, or scaffolds. He can occasionally balance, stoop, and
> crouch, but never kneel or crawl. He can work at unprotected heights
> occasionally. He can work around moving mechanical parts
> occasionally. He can work in humidity and wetness frequently. He can
> work in extreme cold frequently. He can work in vibration frequently.

(Tr. 22). Having assessed a claimant's RFC, at step four the ALJ must determine

whether the claimant has the RFC to perform the requirements of their past

relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still

perform past relevant work requires a determination that the claimant is not

disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work

that the claimant has done within the past 15 years, that was substantial gainful

activity, and that lasted long enough for the claimant to learn how to do it. 20

C.F.R. § 404.1560(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined that Michael L. is unable to perform past relevant work. (Tr. 28). The ALJ noted past relevant work as:

> as a CNC operator which is a medium exertion as listed, very heavy as performed, skilled position; an equipment operator & laborer, stone quarry which is a medium exertion as listed, very heavy as performed, semiskilled position; a ceiling builder and setter which is a medium exertion as listed, very heavy exertion as performed on both occasions, unskilled position; and a floor builder which is a medium exertion as listed, very heavy as performed, semiskilled position.

(Tr. 28). The exertional requirements of each of these exceeded Michael L.'s RFC. (*Id.*).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ made vocational determinations that Michael L. was 42 years old on the alleged onset date, defined as a younger individual age 18–49 by the Regulations. 20 C.F.R. § 404.1563. (Tr. 29). The ALJ also noted that Michael L. "has at least a high school education" and is able to communicate in English, as

6

considered in 20 C.F.R. § 404.1564. (*Id.*). The ALJ determined that upon consideration of these factors, Michael L.'s RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*). The ALJ specifically identified occupations of Copy Machine Operator; Folding Machine Operator; Small Parts Assembler; Electrical Assembler. (Tr. 30).

As a result of this analysis, the ALJ determined that Michael L. was not disabled and denied his application for benefits. (*Id.*).

## III.    Standard of Review

In order to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the

7

Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(b)(3).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). If the factual findings of the Commissioner are supported by substantial evidence and decided according to correct legal standards, a court will be bound by those findings. *Joshua L. v. Colvin*, No. 23-CV-4528, 2024 WL 5170747, at *7 (E.D. Pa. Dec. 19, 2024). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by

9

substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Michael L. is disabled, but whether the Commissioner's finding that Michael L. is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV.    **Discussion**

Michael L. argues that the ALJ erred in three ways. First, he claims that the ALJ failed to properly evaluate the opinion of the consultative examiner, Nurse Practitioner Kelly Shultz. (Doc. 16, p. 6). Second, he claims that the ALJ's RFC assessment was not supported by substantial evidence. (*Id.* at 12). And third, he

alleges that "the ALJ's multiple errors with symptom evaluation compel reversal." (*Id.* at 17).

   A. The ALJ Did Not Err in His Treatment of NP Shultz's Opinion

   Plaintiff asserts that while the ALJ did provide "some reasons" for discounting NP Shultz's opinion, many of the reasons were "logically unsound." (Doc. 16, p. 7). He argues that because the nurse practitioner's opinion was supported by an explanation and was consistent with other evidence, "the ALJ should have found the opinion persuasive." (*Id.*). Plaintiff points to evidence in the physical examination that supports the limitations that NP Shultz recommended and concludes that "[h]ad the ALJ actually considered this evidence, he would have found [] NP Shultz's opinion to be persuasive." (*Id.* at 10). The Commissioner responds to this assertion by arguing that the ALJ properly explained his decision for finding NP Shultz's opinions to be unpersuasive—that the ALJ "contrasted Ms. Shultz's opinion that Plaintiff could never balance with her observations that he exhibited the ability to balance during the examination" and he "cited evidence from other sources that did not suggest Plaintiff was as limited as Ms. Shultz proposed." (Doc. 18, p. 14). Essentially, therefore, the crux of Plaintiff's first argument is a disagreement with the ALJ's evaluation of the record and the fact that the ALJ did not find NP Shultz's opinion persuasive.

11

When presented with a disputed factual record, "it is well-established that '[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations.'" *McClane v. Colvin*, No. 3:24-CV-00535, 2025 WL 1139276, at *11 (M.D. Pa. Jan. 31, 2025), *report and recommendation adopted sub nom. McClane v. Dudek*, No. 3:24-CV-535, 2025 WL 1139275 (M.D. Pa. Apr. 16, 2025) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)). As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96-5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner articulates "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the

examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c).

The most important of these factors are "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to objective evidence and explanations that a medical source provides. 20 C.F.R. § 404.1520c(c)(1). When a source presents objective findings and a clear explanation for a limitation, that source's opinion is deemed to be more persuasive. *Jason F. v. Kijakazi*, No. 4:22-CV-626, 2023 WL 6307985, at \*17 (M.D. Pa. July 28, 2023), *report and recommendation adopted sub nom. Fetterhoff v. Kijakazi*, No. 4:22-CV-00626, 2023 WL 6305788 (M.D. Pa. Sept. 27, 2023). Consistency refers to how consistent a medical opinion is with evidence provided through other medical sources in the record; naturally, if an opinion is consistent with evidence from other medical sources, it is more persuasive. *Id.* at \*18.

To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706–07. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There

is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g.*, *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

With this "significantly deferential" standard in mind, "[o]ur task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record;" and if evidence reasonably supports the ALJ's conclusion. *Vioral v. King*, No. 1:24-CV-283, 2025 WL 539946, at *7 (M.D. Pa. Feb. 18, 2025). Here, ALJ Balutis adequately addressed both the opinion's supportability and consistency in his evaluation, and explained his reasoning such that substantial evidence supports his decision.

Nurse Practitioner Kelly Shultz, the consultative examiner, saw Michael L. on two occasions. (Tr. 27). The first occasion, on May 3, 2022, she observed a

> right-sided limp, use of a cane, inability to walk on heels and toes, and 50% squatting with his cane. (Tr. 1338-39) Nurse Shultz also observed left knee and left lower leg non-pitting edema, trace to +1. (Tr. 1339-40) On physical examination, Mr. [L.] exhibited limited left knee range of motion of 110 degrees (0-150 degrees), limited lumbar flexion of 70 degrees (0-90 degrees), limited lumbar lateral flexion of 15 degrees (0-20 degrees), and limited right ankle dorsi-flexion of 15 degrees (0-20 degrees).

(Doc. 16, p. 9). After that visit, NP Shultz opined that he had a capacity

14

> for a limited range of sedentary exertion with lifting/carrying no more than 10 pounds occasionally, sitting for 8 hours and standing/walking for 2 hours in an 8-hour workday, with standing/walking limited to increments of no more than 15 minutes at one time, requiring the use of a cane to ambulate, with frequent bilateral reaching (including overhead and all other), pushing, and pulling, with occasional use of the left lower extremity for the operation of foot controls, occasionally climbing ramps/stairs, but never climbing ladders/scaffolds, balancing, stooping, kneeling, crouching, or crawling, never working at unprotected heights, occasionally operating a motor vehicle, with the inability to walk a block at a reasonable pace on rough or uneven surfaces, and the inability to climb a few steps at a reasonable pace with the use of a single handrail (Exhibit B4F).

(Tr. 27). At the second visit, on February 22, 2023, NP Shultz observed "that Mr. [L.] had a right-sided limp and used a cane to ambulate, he was unable to walk on heels or ties, and was able to squat to only 40 percent with support. (Tr. 1396) On physical examination, Mr. [L.] exhibited limited left knee range of motion of 100 degrees (0-150 degrees). (Tr. 1406) This evidence supported NP Shultz's limitations." (Doc. 16, p. 9). After this visit, she gave a slightly less restrictive limitation, finding that Michael L. could

> lift 20 pounds occasionally and 10 pounds frequently, carry no more than 10 pounds occasionally, sitting for 8 hours and standing/walking for 2 hours in an 8-hour workday, with standing/walking limited to increments of no more than 15 minutes at one time, requiring the use of a cane to ambulate, with continuous right side reaching (including overhead and all other), pushing, and pulling, but only occasional left side reaching (including overhead and all other), pushing, and pulling, with frequent use of the bilateral lower extremities for the operation of foot controls, occasional climbing of ramps/stairs, stooping, and crouching, but never climbing of ladders/scaffolds, balancing, kneeling, and crawling, never working at unprotected heights, frequently operating a motor vehicle, with the inability to walk a block

15

at a reasonable pace on rough or uneven surfaces, and the inability to climb a few steps at a reasonable pace with the use of a single handrail.

(Tr. 27).

Michael L. argues that the ALJ erred in finding NP Shultz's opinion not to be persuasive for two reasons. First, Plaintiff contests the ALJ's finding that the limitations recommended by NP Shultz were not consistent with objective clinical findings. (Doc. 16, p. 8). Specifically, the ALJ found that the limitation to sedentary work "is not supported by the CRNP's own objective findings on exam." (Tr. 27). In response, Plaintiff points to evidence in the record which purports to show objective findings that are consistent with these limitations, as laid out *supra*, as evidence of his argument that the recommended limitations are supported and consistent with objective clinical evidence. These findings include the measured ranges of motion, Michael L.'s observed limp, and use of a cane to ambulate. (Doc. 16, pp. 9–10).

While Plaintiff may disagree with the ALJ's evaluation, the ALJ did not discredit NP Shultz's opinion without explanation or for the wrong reasons; instead, the ALJ provided citations to the record and fully explained the grounds for his decision. *See Drumm v. Kijakazi*, No. CV 20-3309, 2022 WL 1320394, at *4 (E.D. Pa. May 3, 2022); *McClane v. Colvin*, No. 3:24-CV-00535, 2025 WL 1139276, at *13 (M.D. Pa. Jan. 31, 2025), *report and recommendation adopted sub*

16

*nom. McClane v. Dudek*, No. 3:24-CV-535, 2025 WL 1139275 (M.D. Pa. Apr. 16, 2025). For example, Plaintiff asserts that had the ALJ considered the evidence, including Michael L.'s observed limp and use of a cane, "he would have found [] NP Shultz's opinion to be persuasive." (Doc. 16, p. 10). However, the ALJ did address this in his decision and ultimately found NP Shultz's opinion to be less credible due to perceived contradictions between her observation and her ultimate recommendation on Michael L.'s limitation: "the CRNP said the claimant can never balance or stoop yet noted that the claimant needed no help getting on and off the exam table and was able to rise from a chair without difficulty (Exhibit B4F/p. 5)." (Tr. 27). The ALJ did not disregard the evidence as Plaintiff contends; he did consider it, but found that the evidence was not significant enough to warrant the limitations that NP Shultz recommended. *McClane*, 2025 WL 1139276, at *13.

The Plaintiff also claims that the ALJ erred by finding that NP Shultz's opinion was not consistent with "other medical evidence." (Doc. 16, p. 10). Michael L. then describes over the course of three pages the medical evidence in the record that supports his claims of knee pain and weakness. This includes Michael L.'s descriptions of pain and symptoms after he fell off of a 20-foot ladder in September 2019; imaging showing "moderate degenerative change of the lateral femoral tibial compartment with joint space narrowing osteophyte formation and

17

postsurgical changes partially imaged of the distal femur as well as the proximal tibia. (Tr. 371)"; his diagnoses of chronic pain syndrome, nerve compression and nerve pain; and the surgical interventions including a total left knee replacement. (Doc. 16, pp. 10–11). The ALJ does not ignore or contest this medical history, but instead found the physical assessments performed by two State agency doctors, that were performed after NP Shultz's consultations, to be more persuasive. Dr. Hong Sik Park evaluated Michael L. on June 22, 2022, and found that Michael L. was able to perform light work and opined that "[t]he CE examiner's opinion is an overestimate of the severity of the individual's restrictions/limitations." (Tr. 114– 17). Dr. Gerald Joseph Levandoski evaluated Michael L. on March 15, 2023, and opined the same, including that NP Shultz had recommended overly restrictive limitations. (Tr. 123–27). As Commissioner correctly states, "The ALJ was entitled to find these prior administrative medical findings more persuasive than the limitations provided by Ms. Shultz". (Doc. 18, p. 14).

The ALJ "expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of this opinion." *Gonzalez Rivera v. Kijakazi*, No. 3:21-CV-01574, 2022 WL 4585839, at *8 (M.D. Pa. Sept. 29, 2022). Substantial evidence therefore supports the ALJ's analysis as to the finding regarding consistency and supportability. The ALJ provided adequate rationale

18

such that substantial evidence supports his analysis and evaluation of the record.

As Judge Martin Carlson aptly observed:

> In sum, while McClane argues on appeal that the ALJ erred in this assessment, at bottom this argument invites us to re-weigh the evidence. This we may not do. See, e.g., Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder'")). **In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding.** Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we recommend the Court find that substantial evidence supported the ALJ's evaluation of this case.

*McClane v. Colvin*, No. 3:24-CV-00535, 2025 WL 1139276, at *13 (M.D. Pa. Jan. 31, 2025), *report and recommendation adopted sub nom. McClane v. Dudek*, No. 3:24-CV-535, 2025 WL 1139275 (M.D. Pa. Apr. 16, 2025) (emphasis added).

    B.  Substantial Evidence Supports the ALJ's RFC Assessment

The ALJ found that Michael L. had the RFC to perform light work, except he could stand or walk for 4 out of 8 hours and there were additional occasional postural limitations. (Tr. 22). Plaintiff claims that the ALJ erred in determining his

RFC by failing to address his use of a cane and his need to lie down or elevate his legs throughout the day. (Doc. 16, p. 12).

### 1. Applicable Legal Standards

The ALJ is tasked with assessing a claimant's RFC. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). An RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five of the ALJ's analysis. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

The Third Circuit instructs that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected. *Cotter v. Harris*, 642 F.2d 700, 704, 706–07 (3d Cir. 1981). Because "an ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* The ALJ need not, however, undertake an exhaustive discussion of all the evidence. *See, e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shahala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration

given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

### 2. The ALJ Properly Considered Michael L.'s Cane Use

While there is evidence, including his own testimony, that Michael L. uses a cane for support while walking, that alone is not sufficient to mandate that it be included in the RFC. *Williams v. Colvin*, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014). To rely on evidence that a claimant uses a hand-held assistive device, such as a cane, to support a disability claim, the assistive device must be *medically necessary. Figueroa v. Kijakazi*, No. 1:22-CV-194, 2023 WL 2432909, at *10 (M.D. Pa. Mar. 9, 2023). The Social Security Regulations explain that in order for a hand-held assistive device to be medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p. Reference to use of a cane without a discussion of its medical necessity is therefore not enough to support a finding that a cane is medically necessary. *Howze v. Barnhart,* 53 F. App'x 218, 222 (3d Cir. 2002). And "[a]bsent such documentation, an ALJ need not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor." *Williams v.*

*Colvin*, No. 3:13-CV-2158, 2014 WL 4918469, at \*10 (M.D. Pa. Sept. 30, 2014) (citing *Howze,* 53 F. App'x at 222).

The Plaintiff cites to the record to show that there is consistent documentation regarding his cane usage.[4] Despite this evidence, which comes predominately from Plaintiff's own statements and observations at medical appointments, there has not been medical documentation that establishes the *need* for a hand-held assistive device to walk or stand, let alone a discussion of the circumstances for when it is needed. *See* SSR 96-9p. The fact that NP Shultz wrote in her report that she observed him walk with a limp and that "[h]e did not walk without his cane," and that she checked a box indicating that Plaintiff needs a cane, does not compel a finding that a cane is medically necessary. *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) ("Dr. Khan checked the box for 'hand-held assistive device medically required for ambulation' . . . Other than that, there are multiple references to the fact that appellant uses a cane but no discussion of its medical necessity. The evidence presented by appellant was insufficient to support a finding that his cane was medically necessary."). Additionally, the ALJ cited to

---

[4] For example, during a medical appointment in March 2021, chart indicated that "patient utilize[s] an assistive device, such as cane, walker, crutches, wheelchair or scooter;" (Tr. 499); a chart from a medical appointment in April 2022 indicated the same (Tr. 1290); during a "routine exam for chronic issues" in May 2023, a nurse's note indicates that he used a cane for assistance (Tr. 1425); and at a medical visit at Geisinger Medical Center in December 2022, the examination indicated that Michael L. "uses cane." (Tr. 1615).

contradicting evidence in the record regarding Michael L.'s cane use, such as a meeting with an orthopedic surgeon that noted a "normal" gait and that he "does not use any assistive devices." (Tr. 1501). Because the Plaintiff has not presented "the degree of medical documentation required by Social Security regulations pertaining to his use of a cane to the ALJ, he cannot now be heard to complain that the ALJ failed to fully credit this largely undocumented element of his disability claim." *Phillips v. Colvin*, No. 1:16-CV-1033, 2017 WL 3820973, at *9 (M.D. Pa. Aug. 16, 2017), *report and recommendation adopted sub nom. Philips v. Colvin*, No. 1:16-CV-1033, 2017 WL 3780138 (M.D. Pa. Aug. 31, 2017).

3.  *The ALJ Adequately Evaluated Michael L.'s Need to Elevate Legs*

Plaintiff also claims that the ALJ did not properly evaluate Michael L.'s need to rest and elevate his legs throughout the day. (Doc. 16, pp. 15–16). Plaintiff states that "[o]nce a claimant alleges that he suffers a work-related functional restriction, SSR 96-8p obligates an ALJ to explain how evidence either supports or fails to support that limitation." *See* SSR 96-8p ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). And Plaintiff asserts that the RFC assessment is not adequately supported because the ALJ "did not engage with this evidence as it

applied to Mr. [L.'s] need to rest and elevate [his] legs during the day to relieve lower extremity pain and numbness, and sleep disturbance." (Doc. 16, p. 16).

However, the only evidence that Plaintiff points to in order to support this claim is his own testimony. In the December 5, 2023 hearing, when the ALJ inquired about any issues with sitting, Michael L. stated that he has problems because of "the pressure and the blood flow going to my legs. My feet swell up, so I usually prop them up and then put them down and prop them up." (Tr. 66). He goes on to explain that he lays flat on the recliner to do this. (*Id.* at 66–67). Despite this, the attorney at the hearing did not ask the vocational expert any questions about how Michael L.'s need to elevate his legs would impact his employment. Additionally, during a June 2023 medical visit at the Family Practice Center to discuss pain management, the Medical Assistant wrote under the "Subjective" self-reporting section that Michael L. "states that [his pain] is worse with standing still for long periods of time and he gets some mild improvement with having his legs elevated." (Tr. 1429).

The Court's review of the Commissioner's decision, as stated, is limited to the question of whether the decision is supported by substantial evidence in the record. *Alexandre v. Bisignano*, No. 1:24-CV-1785, 2025 WL 2045186, at *4 (M.D. Pa. July 21, 2025). "The court must 'scrutinize the record as a whole' to determine if the decision is supported by substantial evidence." *Id.* (quoting *Leslie*

25

*v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003)). This Court has not been able to locate any evidence in the record, and the Plaintiff did not point to any in the brief or reply brief, to support the claim that it is medically necessary for Michael L. to have his legs elevated.[5] As the U.S. Supreme Court has explained, substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal quotation omitted). Here, substantial evidence supports the ALJ's decision that Michael L. is not medically required to elevate his legs. It was not error for the ALJ to omit that from the RFC determination.

There is case law surrounding limitations to allow claimants to elevate their legs; however, the facts of those cases are quite distinguishable from the facts at hand. In cases where an ALJ's decision has been reversed for failing to evaluate the need for a plaintiff to elevate their legs, the common theme is that objective medical evidence supported this limitation. *See, e.g.*, *Pendergast v. Kizakazi*, No. 3:22-CV-00627, 2023 WL 5943140, at *8 (M.D. Pa. Sept. 12, 2023) (objective medical evidence called for consideration of the limitation of leg elevation, and

---

[5] The Commissioner points to other evidence in the record indicating that Plaintiff does *not* have a medical need to elevate his legs throughout the day: "Indeed, Ms. Shultz opined that Plaintiff could sit for eight hours without interruption (Tr. 1342), and Drs. Park and Levandoski found that he could sit, stand, or walk, consistent with a range of light work (Tr. 114, 123)." (Doc. 18, p. 18).

counsel for the plaintiff specifically posed a hypothetical question to the vocational expert about the effect on employment that the need to elevate her legs would have); *Amy P. v. Kijakazi*, No. 2:20-CV-12082, 2022 WL 3586393, at *9 (D.N.J. Aug. 22, 2022) (a physician opined that plaintiff should elevate her legs 50% of the time during an eight-hour work day, and the ALJ's analysis did not support a rejection of this limitation); *Seibert v. Saul*, No. 1:18-CV-10, 2019 WL 4439653, at *7–8 (M.D. Pa. Aug. 28, 2019), *report and recommendation adopted,* No. 1:18-CV-10, 2019 WL 4420578 (M.D. Pa. Sept. 16, 2019) (when a treating physician confirms a plaintiff's need to be seated with elevated legs and it was "clearly recognized" that the need to keep his legs elevated would impair his ability to work, "an inadequate discussion of the medical necessity for a disability claimant to elevate his legs for prolonged periods . . . is generally regarded as a material shortcoming in analysis by an ALJ and compels a remand.").

No such evidence exists here. In fact, even NP Shultz, who had one of the most restrictive limitations, found in the most recent consultation, in February 2023, that Michael L. did not suffer from edema. (Tr. 1397). She also opined that Michael L. could perform "operation of foot controls" frequently in both his right and his left foot. (Tr. 1401). The ALJ discussed the symptoms that Michael L. claimed, including that he can only stand for five minutes, lies flat in a recliner to relieve the swelling and pressure in his feet, and lying down makes his left leg pain

27

somewhat better, but ultimately decided not to incorporate the effects of these symptoms into the RFC. (Tr. 23). There is therefore no objective evidence supporting a medical necessity for Michael L. to keep his feet elevated throughout the day, and it was not error for the ALJ to omit this limitation from the RFC. *See Candusso v. Kijakazi*, 622 F. Supp. 3d 100, 108 (W.D. Pa. 2022) ("The Court finds no error in the ALJ's assessment of the alleged leg-elevation limitation and his exclusion of that limitation from the RFC based on the lack of objective evidence demonstrating its necessity in the record.").

C. Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Subjective Symptoms.

Plaintiff argues that the ALJ erred when he evaluated Michael L.'s subjective symptoms, especially as it relates to his allegations of pain and his efforts to seek relief and the meaning of his prior employment.

Michael L. contests the ALJ's finding that Plaintiff's "statements were inconsistent with objective findings." (Doc. 16, p. 17) (citing Tr. 24). 20 C.F.R. 404.1529(c)(2) provides guidance as it relates to pain, instructing that:

> [ALJs] must always attempt to obtain objective medical evidence and, when it is obtained, [the ALJ] will consider it in reaching a conclusion as to whether [plaintiff is] disabled. However, [the ALJ] will not reject [plaintiff's] statements about the intensity and persistence of [his or her] pain or other symptoms or about the effect [his or her] symptoms have on [their] ability to work solely because the available objective medical evidence does not substantiate [their] statements.

20 C.F.R. 404.1529(c)(2). Importantly, the Social Security Regulations further describe how ALJs determine the extent to which symptoms like pain affect a plaintiff's capacity to engage in work activities. The ALJ will consider whether there are any inconsistencies in the evidence and the extent to which there are conflicts between the plaintiff's statements and the rest of the evidence. 20 C.F.R. 404.1529(c)(4). And it is "clearly within the ALJ's discretion to make credibility determinations regarding Plaintiff's subjective testimony as to his symptoms and limitations." *Brock v. Barnhart*, No. CIV.A. 03-811, 2006 WL 724323, at *7 (E.D. Pa. Mar. 16, 2006) (citing *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983)).

While Plaintiff points to the medical evidence of record that supports his contention that he cannot work, (*see* Doc. 16, p. 18-9), there is also evidence in the record to the contrary. The ALJ evaluated this evidence and concluded that the RFC is supported by Michael L.'s response to treatment, his daily activities, the longitudinal physical examination findings and mental status examination findings, the diagnostic testing, and the opinion evidence of record that was found persuasive. (Tr. 28). The issue is not whether Plaintiff agrees with the ALJ's interpretation of Plaintiff's subjective allegations, but rather whether there was a reasoned explanation behind the ALJ's evaluation of the claimant's subjective complaints. *Jennifer B. v. Kijakazi*, No. 1:20-CV-20364, 2022 WL 577960, at *15

29

(D.N.J. Feb. 25, 2022) ("[T]he Court finds that the ALJ sufficiently explained her reasoning in evaluating Plaintiff's subjective complaints. The ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference."). After reviewing the factual findings of the ALJ, his opinion is supported by substantial evidence and is therefore entitled to deference.[6] *Davis v. Comm'r of Soc. Sec.*, 105 F. App'x 319, 321 (3d Cir. 2004).

The Plaintiff also contends that the ALJ erred in not considering his work history when evaluating his subjective allegations, and that the fact that he maintained overall consistent employment between 1997 and 2019 should have bolstered his subjective allegations of the symptoms. (Doc. 16, p. 20). "The United States Court of Appeals for the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not 'explicitly discuss his years of uninterrupted employment[,]' but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints." *Vilma G. v. Kijakazi*, No. 2:21-CV-1402, 2022 WL 1451567, at *10 (D.N.J. May 9, 2022) (citing *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015)). The ALJ here discussed why other evidence, including the physical examinations, treatment, and his daily activities, undermined Michael L.'s subjective complaints.

---

[6] Indeed, "[o]verturning an ALJ's credibility determination is an 'extraordinary step,' as credibility determinations are entitled to a great deal of deference." *Metz v. Fed. Mine Safety & Health Rev. Comm'n*, 532 F. App'x 309, 312 (3d Cir. 2013).

The ALJ thoroughly discussed the evidence in a comprehensive and analytical manner, and included sufficient statements of facts on which he based his ultimate conclusions. *Davis v. Comm'r of Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981)).

## V.    <u>Conclusion</u>

The ALJ's evaluation of the evidence and RFC determination was clearly articulated and supported by substantial evidence. The Commissioner's decision will be affirmed. An appropriate order follows.

**Dated:** March 31, 2026

*s/ Leo A. Latella*
**LEO A. LATELLA**
**United States Magistrate Judge**

31